UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

The Bankruptcy Estate of
Richard and Katherine
Ketterling,

    Plaintiff,

v.

Chicago Title Insurance Company,

    Defendant.

MEMORANDUM OPINION
AND ORDER
Civil No. 09-1776 (MJD/JJK)

_____

    Robert A. Gust, Kretsch & Gust, PLLC, Counsel for Plaintiff.

    Steven R. Little, Coleman, Hull & Van Vliet, PLLP, Counsel for Defendant.

_____

The matter involves coverage under a title insurance policy. Before the Court are cross motions for summary judgment. Based on the language of the title policy at issue, and the applicable law, the Court finds that Chicago Title did not owe the Ketterlings a duty to defend against an underlying claim and that Chicago Title is entitled to judgment.

**Background**

James and Carolyn Hamilton were the former owners of property located

at 15420 Eagle Creek Avenue NE, Prior Lake, Minnesota. When the Hamiltons began to experience financial trouble, they approached Richard Ketterling, who is a licensed real estate agent, about selling their property. Ketterling and his wife Katherine, who is also a licensed real estate agent, operated a real estate agency they called "The Ketterling Group." While the property was listed for sale, the Hamiltons began to experience financial and personal difficulties, causing them to default on their mortgage. Allegedly, Richard Ketterling offered to purchase the property and sell it back to them on a contract for deed. Ketterling disputes this fact, alleging that he only agreed to lease the property back to the Hamiltons at a monthly rate of $3,500. Whatever the terms of the parties' agreement, it is undisputed that such agreement was never memorialized in writing. (Little Affidavit, Ex. 9 (Order and Judgment, p. 4).) When Ketterling purchased the property in April 2004, he also purchased title insurance from Defendant Chicago Title Insurance Company ("Chicago Title"), through its closing agent Land Title, Inc. (the "Policy"). (Id. Ex. 2.)

The Hamiltons again suffered from personal difficulties and ceased making payments to Ketterling. Thereafter, in July 2005, Ketterling commenced eviction proceedings against them. Richard Hamilton then filed a separate action

2

against Ketterling, his wife and others, alleging twelve causes of action, including consumer fraud, unjust enrichment, civil conspiracy and promissory estoppel. (Id., Ex. 5.) Hamilton also filed a Notice of Lis Pendens on the property. (Kretsch Aff., Ex. B.)

In July 2005, the Ketterlings entered into a purchase agreement to sell the property for $1,025,000 with Epic Development LLC ("Epic"). (Kettlerling Aff., Ex. B.) Upon learning of the Hamilton action and of the Notice of Lis Pendens filed against the property, the purchaser backed away from the purchase agreement. (Id., Ex. C.) Subsequently, the Ketterlings were forced to let the property go into foreclosure. The Ketterlings assert that the mortgages on the property totaled $774,000. It is the Ketterlings' position that because the sale to Epic did not go through, they lost approximately $250,000. In addition, the Ketterlings assert that they expended approximately $150,000 defending against the Hamilton action. (Kretsch Aff. ¶ 5.)

**The Policy**

The Policy at issue became effective on April 15, 2004 (the "Policy"). (Little Aff., Ex. 2.) The Policy provides that it "insures You against actual loss, including any costs, attorney's fees and expenses provided under this Policy,

3

resulting from the Covered Risks set forth below . . ." (Id.) "Covered Risk" includes the following:

> [s]omeone else owns an interest in Your Title;
> [s]omeone else has rights affecting Your Title arising out of leases, contracts, or options;
> the Title is defective;
> any of the Covered Risks occurring after the Policy issued;
> [s]omeone else has an encumbrance on Your Title; and
> [s]omeone else claims to have rights affecting Your Title arising out of fraud, duress, incompetency or incapacity.

(Id.) The Policy also provides for a number of exclusions from coverage, including:

> In addition to the Exceptions in Schedule B, You are not Insured against loss, costs, attorneys' fees and expenses resulting from: . . . Risks (a) that are created, allowed, or agreed to by You, whether or not they appear in the Public Records . . .

(Id. Exclusion 4(a).)

After the Hamilton action was filed, Ketterling tendered the defense of such action to Chicago Title. (Id., Ex. 7.) Chicago Title denied the claim in June 2006, asserting that the loss alleged in the Hamilton complaint did not fall within the "Covered Risks" as defined in the policy, because the policy did not cover loss due to fraud. (Id., Ex. 8.) In addition, Chicago Title asserted the loss fell within Exclusion 4(a). (Id.) Because the policy did not provide coverage,

Chicago Title asserted it had no duty to defend. (Id.)

**Standard for Summary Judgment**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. This burden can be met "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." Id. at 325. The party opposing summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

**Analysis**

Chicago Title argues it is entitled to summary judgment because it owed no duty to defend the Ketterlings in the Hamilton action, and that it properly denied coverage, because a title insurer has no obligation to provide a defense to an insured where the action relates to the manner in which the insured acquired

5

title, and not to the title itself, especially where it is alleged that the insured obtained the title by fraud.

> Title insurance is intended to protect against all loss or damage which the insured sustains by reason of "(1) existing defects in, or unmarketability of title . . ; (2) leases and encumbrances changing the same as of the date of the policy; (3) defects in title of a mortgagor to the mortgaged estate, or mortgaged interest.

Rechtzigel Trust v. Fidelity Nat'l Title Ins. Co. of N.Y., 748 N.W.2d 312, 316 (Minn. Ct. App. 2008). "Title insurance does not insure the value of the subject property; it insures only that the title to such property is unencumbered by unknown liens, easements, and the like which might affect the property's value." First Fed. Sav. & Loan Assoc. of Fargo v. Transamerica Title Ins. Co., 19 F.3d 528, 530 (10th Cir. 1994). "The risk of coverage is retrospective; only the discovery of the defect is usually prospective." Rechtzigel, 748 N.W.2d at 320.

"'When interpreting an insurance contract, words are to be given their natural and ordinary meaning and any ambiguity regarding coverage is construed in favor of the insured.'" Id., at 316 (quoting Am. Family Ins. Co. v. Walser, 628 N.W.2d 605, 609 (Minn. 2001)). The duty to defend under a particular policy is broader than the duty to indemnify. Id. at 320. The duty to defend is determined by comparing the allegations in the underlying complaint

6

with the relevant policy language. Id. If any part of the claims in the Hamilton action arguably fell within the scope of coverage, the duty to defend is triggered. Id. at 320-21.

Here, the policy excludes risks "created, allowed, or agreed to by You, whether or not they appear in the Public Records". (Little Aff., Ex. 2 (Exclusion 4(a).) In the Hamilton action, the Hamiltons alleged that Ketterling obtained title on their property through fraudulent means. (Little Aff., Ex. 5 (Hamilton Complaint).) All claims asserted in the complaint are based on this alleged fraudulent conduct. (Id.) Chicago Title asserts that claims alleging that the insured obtained title by fraud, undue influence or similar tortious conduct have been uniformly considered excluded under policy language virtually identical to the exclusion at issue here. See, e.g., Mattson v. St. Paul Title Company of the South, 641 S.W.2d 16, 18 (Ark. 1982) ("[Insurer] did not insure plaintiff against the consequences of its own acts, was not liable for any loss occasioned thereby, and was not obliged to defend any suit attacking plaintiff's title, even though entirely unfounded if based on acts claimed to have been committed by plaintiff.") (quoting Brick Realty Corp v. Title Guarantee & Trust Co., 291 N.Y.S. 637, 638 (1936)); Kachel v. Chicago Title Ins. Co., 98 Civ. 5486, 1999 WL 123807

7

(S.D.N.Y. March 8, 1999) (same); <u>Carefree Living of Am. v. Chicago Title Ins. Co.</u>, No. C4-99-1651, 2000 WL 290411 (Minn. Ct. App. March 21, 2000) (same).

In <u>Safeco Title Ins. Co. v. Moskopoulos</u>, 116 Cal. App.3d 658, 172 Cal. Rptr. 248 (Cal. Dist. Ct. App. 1981) the court addressed a title insurance coverage issue similar to the issue in this case. The court determined that where the underlying claim did not involve any defects in the title, rather it involved how the title was acquired, the claim was not covered by the policy pursuant to the following exclusion, ""Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant. . . " <u>Id.</u> at 665.

> Under appellant's theory that the [underlying] action and lis pendens constitute a defect in the title and render the title unmarketable, a title company insuring a buyer of real property under a standard form title policy such as the Safeco policy, notwithstanding an otherwise impeccable title, would have a potential liability to defend the insured in any third party action brought against the insured seeking rescission of the sale . . . or seeking to impress a constructive trust on the real property for the benefit of another, unless eliminated from coverage by the exclusionary clause. No reasonable construction of the policy could yield that result, nor could the insured reasonably expect the insurer to provide a defense under those circumstances.

The Ketterlings oppose Chicago Title's motion and have filed a cross motion for summary judgment. The Ketterlings assert that the Hamilton action placed a cloud on the title of the property, and that the policy at issue was meant

to protect against such a circumstance. With regard to the "created or suffered" exclusionary clause, the Ketterlings assert that insurers should not be allowed to avoid liability if the insured was innocent of any conduct causing the loss or was simply negligent in bringing about the loss. See Brown v. St. Paul Title Ins. Co., 643 F.2d 1103, 1108, n.8 (8th Cir. 1980)[1]. Because the Ketterlings were not found to have engaged in any wrongdoing in the Hamilton action, Chicago Title cannot rely the asserted exclusion.

The coverage issue is determined by the policy language compared to the claims asserted in the underlying action. It is of no consequence if the insured successfully defends. See Mattson 641 S.W.2d at 18 (finding there is no duty to defend, even against claims that are entirely unfounded, as long as the claims are based on acts committed by the insured).

Because the Hamiltons' action was based on claims that the Ketterlings obtained title to the property through fraudulent means and misrepresentations,

---

[1] Brown does not support the Ketterlings' position. The cited footnote construed the "created or suffered" exclusion to require an affirmative act by the insured that brought about the loss. For example, in footnote 8, the court cites to Arizona Title Ins. & Trust Co. V. Smith, 21 Ariz. App. 371, 519 P.2d 860 (1974). In that case, the court found that a special assessment levied by the City and attached to property was not "created" by the insured. By contrast, the Ketterlings are alleged to have obtained the warranty deed to the property through fraud or misrepresentations.

Exclusion 4(a) of the policy excludes coverage in this case.

IT IS HEREBY ORDERED that Defendant Chicago Title Insurance Company's Motion for Summary Judgment [Doc. No. 12] is GRANTED. Plaintiff Bankruptcy Estate of Richard and Katherine Ketterling's Motion for Summary Judgment [Doc. No. 17] is DENIED. This matter is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY

Date: September 30, 2010

s/ Michael J. Davis  
Michael J. Davis  
Chief Judge  
United States District Court